# EXHIBIT A

## Excerpts of 341 Transcript

151562870

1

1                        UNITED STATES BANKRUPTCY COURT
                         EASTERN DISTRICT OF PENNSYLVANIA
2


3   IN RE:                           .  Chapter 11
                                     .  Case No.: 24-13553 (AMC)
4   CULLOO ENTERTAINMENT, LLC,       .
                                     .
5                                    .  Suite 400
                                     .  900 Market Street
6                  Debtor.           .  Philadelphia, PA 19107
                                     .
7                                    .  Thursday, November 11, 2024
    . . . . . . . . . . . . . . . .  .  10:03 a.m.
8


9                     TRANSCRIPT OF TELEPHONIC MEETING
                      SECTION 341(a) MEETING OF CREDITORS
10


11  APPEARANCES:

12  For the U.S. Trustee:     Kacie M. Cartwright, Esquire
                              OFFICE OF THE UNITED STATES TRUSTEE
13                            Robert N.C. Nix Federal Building
                              900 Market Street
14                            Suite 320
                              Philadelphia, Pennsylvania 19107
15
    For the Subchapter V
16  Trustee:                  Holly Smith Miller, Esquire
                              HELLERT SEITZ BUSENKELL & BROWN, LLC
17                            901 Market Street
                              Suite 3020, Suite 1901
18                            Philadelphia, Pennsylvania 19107

19  (APPEARANCES CONTINUED)

20  Audio Operator:           Electronically recorded

21  Transcription Company:    Reliable
                              The Nemours Building
22                            1007 N. Orange Street, Suite 110
                              Wilmington, Delaware 19801
23                            Telephone: (302)654-8080
                              Email:  gmatthews@reliable-co.com
24
    Proceedings recorded by electronic sound recording,
25  transcript produced by transcription service.

```
 1  APPEARANCES (CONTINUED):

 2  For the Debtor:          Donald Benedetto, Esquire
                             GAMBURG & BENEDETTO, LLC
 3                           1500 John F. Kennedy Boulevard
                             Suite 1203
 4                           Philadelphia, Pennsylvania 19102

 5                           -and-

 6                           Joseph Rutala, Esquire
                             RUTALA LAW GROUP, PLLC
 7                           1500 John F. Kennedy Boulevard
                             Suite 1203
 8                           Philadelphia, Pennsylvania 19102

 9  For Brayden Massie:      Thomas D. Bielli, Esquire
                             BIELLI & KLAUDER, LLC
10                           1905 Spruce Street
                             Philadelphia, Pennsylvania 19103

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

 1 | this time.

 2 | Q     Okay.  Are you currently a creditor of the debtor?

 3 | A     I don't believe I am.

 4 | Q     Okay.  Do you anticipate having any of the money that

 5 | you've loaned or given to the debtor over the last eight

 6 | years being repaid through this bankruptcy?

 7 | A     I don't believe so.

 8 | Q     Okay.  Has the debtor ever filed bankruptcy before?

 9 | A     No.

10 | Q     All right.  Now, what led to this bankruptcy filing?

11 | A     We were sued by a customer of the nightclub over the

12 | event space and our former attorney, without authorization,

13 | signed an arbitration agreement with an award up to $1.25

14 | million, when I had given him instructions to sign an

15 | arbitration agreement with a settlement up to $300,000, and

16 | the award granted was $995,000 to the Plaintiff.

17 |       After that was discovered, my former attorney was fired

18 | and disbarred and we're currently suing his firm for

19 | malpractice.  That was the last event that preceded the

20 | bankruptcy.  Before that, we were operating as normal, and

21 | then, in the general (indiscernible) affairs with some

22 | concessions from the landlord, but we were mostly fine.  We

23 | were paying our two other debtors -- we have two SBA loans.

24 | Q     Okay.  And what are the debtor's plans regarding

25 | reorganization?

 1  COVID, that it's calculated in, but there's no judgment is my

 2  understanding.

 3         MS. CARTWRIGHT:   Okay.

 4  BY MS. CARTWRIGHT:

 5  Q    Mr. De Berardine, do you ratify those statements of

 6  your counsel?

 7  A    I do.

 8  Q    Okay.  Can you tell me some, Mr. De Berardine, about

 9  the SBA loans?

10  A    Yes.  During COVID, Culloo was eligible for a PPP loan,

11  which was partially forgiven, and then we have been making

12  payments on the balance due.  And it was also eligible for an

13  EIDL loan, which, again, it had been making payments on.

14  Q    Okay.

15  A    I believe both loan accounts were current or close to

16  current when we found out about the situation with Brayden

17  Massie and then we stopped making payments on them.

18  Q    Okay.  So on the SOFA, the statement of financial

19  affairs, there's some other lawsuits listed here in addition

20  to the Massie case.

21         Could you tell me what is the nature of Smith et al. v

22  Culloo?

23  A    I believe that's another personal injury --

24  Q    Okay.

25  A    -- case.  We receive about -- I don't know -- I would

 1  say on average, two to four personal injury claims per year.

 2  Q    Okay.

 3  A    Most of the time they're either handled by insurance

 4  or -- I know that we settled one ourselves about three months

 5  ago in August.

 6      The Brayden Massie claim occurred right after COVID

 7  when we were in the process of obtaining insurance when we

 8  received it yet --

 9  Q    Okay.

10  A    -- so it was not an insurance loss.

11  Q    Okay.  Ward v Culloo, is that, similarly, a personal

12  injury?

13  A    I believe so, yes.

14  Q    Okay.  And you've got some where the named Defendant is

15  "NOTO Philadelphia, et al."

16      Who is NOTO Philadelphia?

17  A    That's going to be the CPA of Culloo.

18  Q    Okay.  So are these all personal injury lawsuits?

19  A    I believe so.  I don't have any of the dockets in front

20  of me.  I would refer to Don, but I don't believe there's any

21  other action.

22  Q    Okay.

23          MR. BENEDETTO:  They're all injury.

24  BY MS. CARTWRIGHT:

25  Q    So, it looks like between you and Margaret and Robert,

 1              So I think everything needs to probably be

 2    reviewed.  So I'm going to hold this open and give time for

 3    counsel and debtor representative to get together and amend

 4    these schedules.  If they're amended and everything is

 5    covered, then we might not actually need to meet in person

 6    again, but I do want to hold open this examination to make

 7    sure that those amendments happen, and so I'm going to

 8    reschedule this.

 9              December 12th at 10:00, does that work for folks?

10              MR. BENEDETTO:  December 12?  I'll put it in now.

11              MR. RUTALA:  Just one moment.

12         (Pause)

13              MR. BENEDETTO:  That works for me, Don Benedetto.

14              MS. CARTWRIGHT:  Okay.  All right.

15              We're going to hold this over to December 12th

16    at 10:00.  I'll make the adjustments to the docket.

17              MR. BIELLI:  Is that Thursday, December 12th?

18              MS. CARTWRIGHT:  Yes, that is correct.

19              MR. RUTALA:  I should be able to.  There's a

20    chance I could be in a trial, but I should be able to --

21              MS. CARTWRIGHT:  Okay.  And, again, I'm not here

22    to give legal advice, so I'm not going to tell you what to do

23    if there's cash collateral issues that need to be resolved,

24    but general practice, sunlight is the best disinfectant.

25              Disclosure is better than nondisclosure.  Things

1  can work and be ratified through the bankruptcy process, but

2  that needs to be brought up through appropriate motion

3  practice and put before the Court openly so that all parties

4  have a chance to review those motions.

5          I will specifically say that having two counselors

6  from different law firms acting as counsel for the debtor may

7  run afoul of 11 U.S.C. 504, which is a prohibition against

8  the sharing of compensation for attorneys doing the same kind

9  of work that do not work for the same law firm.  So I would

10  urge counsel to review that section of the Code, make sure

11  they're not in violation of that when they file their

12  retention application.

13          Yeah, Mr. Bielli, I think I hit the highlights of

14  things that you raised that should be amended.  Did I miss

15  anything from your perspective?

16          MR. BIELLI:  Oh, the only other -- thank you,

17  Ms. Cartwright -- again, Tom Bielli for the record -- the

18  only thing I would add and, you know, we should have a

19  conversation.  I know debtor's counsel has spoken to my co-

20  counsel or my non-bankruptcy counsel, but it probably would

21  make sense because we're going to have a position on any sort

22  of remand, as well.

23          But with respect to the schedules, Kacie, yeah, I

24  mean, they're employing an outside accountant.  That needs to

25  be approved.  There needs to be someone who's doing the

1   books.  I don't know who Margaret is.  I know Margaret has

2   the last name of the debtor's principal, who seems also to be

3   an insider and also related to a creditor, and she's the one

4   doing -- I'm not sure.  I'm just -- I mean, I know we have --

5   I'm just not sure.  I mean, there seems to be a lot going on

6   here.  The utilities aren't listed.

7           MS. CARTWRIGHT:  Uh-huh.

8           MR. BIELLI:  We've got several contracts that the

9   debtor testified to that aren't listed on Schedule G.  I

10  didn't even get into the personal guaranties, which would be

11  on Schedule H.

12          I think you guys just need to go through the

13  schedules.

14          MS. CARTWRIGHT:  Yeah.

15          MR. BIELLI:  That's just my two cents, for

16  whatever that's worth.

17          MS. CARTWRIGHT:  Yeah, again, Kacie Cartwright for

18  the U.S. Trustee.

19          Definitely, retention of professionals, and that

20  goes beyond just general bankruptcy counsel here; that's

21  going to be your accountants, as well as, probably, I mean,

22  at the very least, you've got your special counsel that will

23  come in for this malpractice case and all interested parties,

24  all creditors of the debtor have a right to know the terms of

25  engagement for special counsel, and an opportunity to object

 1  if those terms are objectionable to the parties in interest,

 2  and then the Court will get to decide if it becomes a

 3  contested matter as to retention of general counsel, special

 4  counsel, accountants, anyone, and everyone as a professional

 5  of the debtor.

 6          THE WITNESS:  I'm sorry, this is James De

 7  Berardine.  I just have a question related to that.

 8          MS. CARTWRIGHT:  Yeah.

 9          THE WITNESS:  So the accountant's engagement is

10  not active, currently, because she just finished the tax

11  return for the prior year, so she wouldn't be doing any work

12  in the, I would say, next six months.

13          Should we still list her because she won't be

14  active or being paid?

15          MS. CARTWRIGHT:  That is a conversation that you

16  will need to have with your attorney; I can't advise you on

17  that.

18          THE WITNESS:  Okay.

19          MS. CARTWRIGHT:  If we do call another meeting,

20  can Margaret be available to testify?  It sounds like she

21  was -- has been involved with a lot of the bookkeeping.

22          THE WITNESS:  I will ask her and I'll follow up.

23          MS. CARTWRIGHT:  Okay.  If we need to have

24  testimony from her as debtor's representative, we can move

25  the schedule around and make that happen.

 1               But as it stands right now, Holly, did you have

 2   anything else to add?

 3               MS. MILLER:  Not at this time, thank you.

 4               MS. CARTWRIGHT:  All right.  We're going to

 5   continue this meeting until December 12th at 10:00 a.m.

 6               Whether we hold that then or not will be dependent

 7   on, at the very least, I need the debtor to amend the

 8   schedules and statement of financial affairs, as appropriate.

 9               I'll review those and we'll take it from there and

10   I will let the parties know if attendance is not needed, but

11   absent that, assume that you should come in for additional

12   questioning.

13               All right.  Thank you all.

14               MR. BENEDETTO:  We'll amend the schedules

15   immediately and get everything that needs to be submitted

16   well in advance.

17               MS. CARTWRIGHT:  Okay, great.  I appreciate it.

18   Let's -- can you get me those within -- can you get those

19   before Thanksgiving; is that all right?

20               MR. BENEDETTO:  A hundred percent, not an issue.

21               MS. CARTWRIGHT:  Okay.  Great.

22               All right.  Thank you all.  Have a good day.

23               MR. BIELLI:  Thanks, everybody.  Have a great day.

24               MR. BENEDETTO:  Thank you all.  Have a good one.

25          (Proceedings concluded at 11:11 a.m.)

47

1                              CERTIFICATION

2            I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7

8    /s/ William J. Garling                    November 29, 2024

9    William J. Garling, CET-543

10   Certified Court Transcriptionist

11   For Reliable

12

13

14

15

16

17

18

19

20

21

22

23

24

25