IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| CULLOO ENTERTAINMENT, LLC | : | |
| | : | Case No: 24-13553-AMC |
| Debtors | : | |
| | : | |

DEBTOR'S RESPONSE TO CREDITOR, BRAYDEN MASSIE'S, MOTION TO CONVERT OR APPOINT CHAPTER 11 TRUSTEE

Debtor, by and through the undersigned counsel, hereby files this Response to Creditor, Bradyen Massie's, Motion to Convert or Appoint Chapter 11 Trustee, and in support thereof, does state as follows:

FACTS

1. On October 1, 2024 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy code.

2. The Debtor elected to proceed under Subchapter V of Chapter 11 of the Bankruptcy Code.

3. As a debtor-in-possession, Debtor continues to operate the business pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Debtor is in the business of providing live and disc jockeyed entertainment and service of alcoholic beverages.

5. After Debtor filed the Petition, the U.S. Trustee held the 341(a) meeting of creditors, which was attended by Creditor Brayden Massie's attorney.

6. During the 341(a) meeting, the Debtor, by and through its agent James De Berardine testified as to the assets and debts of the Debtor.

1

7. At that time, Mr. De Berardine freely disclosed a promissory note held by the Debtor against Gaurvjit Singh that was not listed in the Petition.

8. When asked why it was not listed, Mr. De Berardine explained that the statute of limitations for enforcement of the promissory note had expired nearly a year prior and he did not believe that it was an asset.

9. Further, when discussing creditors, Mr. De Berardine was asked about the Debtor's vendors.

10. Mr. De Berardine stated that they had various venders who were not placed on the petition as creditors because they were all paid up to date and no money was owed.

11. Mr. De Berardine also discussed the relationship between Debtor and Meritis Group LLC, which was clearly listed on the Petition as being an insider.

12. Mr. De Berardine explained that the debtor shared common members with Meritis Group LLC, except that the majority owner of Meritis Group LLC was not a shared member and was a family trust.

13. At the end of the meeting of creditors, the Trustee requested that Debtor amend the schedules to reflect the vendors and the promissory note.

14. The U.S. Trustee rescheduled a 341(a) meeting of creditors for December 12, 2024, to allow the application and amendments to be made.

15. Shortly after the meeting of creditors, on November 20, 2024, Debtor filed its application to hire professional nunc pro tunc.

16. This was objected to by the U.S. Trustee, which was joined by Creditor, Brayden Massie.

17. The Court held a hearing on December 11, 2024, wherein the Court found that the post-petition payment to Gamburg and Benedetto LLC had to be returned; however, also suggested that Petitioner could hire new counsel or voluntarily dismiss its application and reapply with current counsel to resolve the inconsistency in the original petition.

18. At the hearing, the U.S. Trustee indicated that if Debtor failed to obtain new counsel, then it would make its own application to dismiss the petition.

19. The following day, December 12, 2024, Debtor filed its petition with the Court to voluntarily dismiss the petition.

20. After filing the petition, Creditor Brayden Massie spoke with Debtor, by and through counsel, and stated that they were willing to consent to the dismissal if Debtor agreed to give Creditor Brayden Massie preferential treatment in the resolution of the below stated matters.

21. At that time, and currently, there is an action against Blank Rome, LLP; Nochumson, P.C.; and Jared Klien that was brought by four different plaintiffs: Meritis Group, LLC; Debtor; No Ordinary Hospitality Group, LLC; and No Ordinary Hospitality Group-Houston, LLC.

22. These lawsuits were brought in the Philadelphia Court of Common Pleas under docket number 241000962 and were removed to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1452 and Fed. R. Bankr. P. 9027 based solely upon Debtor's petition.

23. The agreement that Creditor Massie offered was to be secured against the funds obtained in resolution of the claims, not only owed by the debtor claims owned by all the other non-debtor entities in the related litigation. Ex. A., Emails & Attachment.[1]

---

[1] Fed. R. Evid. 408 is not applicable in its use herein as "the rule is limited to evidence concerning settlement or compromise of a claim, where the evidence is offered to establish liability, or the validity or amount of the claim."

24. After the debtor rejected the offer, Creditor, Brayden Massie, filed its objection the Debtor's motion for voluntary dismissal.

25. On December 24, 2024, Blank Rome LLP, the defendant in the aforementioned suit filed an objection to Debtor's motion for voluntary dismissal.

26. Creditor Massie is not the only creditor in the matter.

27. In addition to Creditor Massie, there is Meritis Group, LLC, whose claim is $1,085,544.24, and the Small Business Administration, whose claim is $659,000.00.

28. Prior to the Petition and post-Petition, Debtor has been paying and is currently on debt for the SBA Loans.

29. Similarly, Debtor has paid all its vendors and employees.

30. The only other debtor who has not been paid in full is Debtor's landlord, Meritis Group, LLP, which has been working with Debtor.

31. Debtor is a nightclub that occupies a space that is roughly 60,000 square feet, which is a difficult space to let.

32. There are no other creditors that have filed an objection to Debtor's motion for voluntary dismissal.

## LEGAL ARGUMENT

i.  *Conversion to Chapter 7 is not in the best interest of all the creditors when applying the relevant factors under the Best Interest of Creditors Test analysis.*

33. Section 1112(b) provides for any party of interest to motion the court to dismiss or convert a case where 1) there is cause and 2) it is determined to be in the best interest of the Creditors:

---

*Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 526 (3d Cir. 1995). Here it is offered to show the conduct and intent of creditor in filing its opposition.

4

> [A]fter notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b).

34. When determining a motion under section 1112(b), "a court must, as a threshold matter, determine whether such "cause" exists. *In re Mech. Maint., Inc.*, 128 B.R. 382, 386 (E.D. Pa. 1991).

35. "Once the threshold is passed and cause is found to exist, the decision whether to convert to Chapter 7 or to dismiss is committed to the discretion of the bankruptcy court." *Id.*

36. In making this determination, "the choice of conversion or dismissal must be based . . . on a 'best interest of creditors and the estate' test." *Id.*

37. Hence, our courts have found that a "motion filed under § 1112(b) necessitates a two-step analysis: (1) to determine if cause exists to either dismiss the case or convert it to chapter 7, and (2) if so, which option is in the best interests of creditors and the estate (unless appointment of a trustee under § 1104 is in the best interests)." *In re Stream TV Networks, Inc.*, No. BR 23-10763 (MDC), 2024 WL 87639, at *14 (Bankr. E.D. Pa. Jan. 5, 2024) (slip); see also In re SGL Carbon Corp., 200 F.3d 154, 159 n. 8. (3d Cir. 1999).

38. The Courts have recognized that the application of the Best Interest of Creditors Test ("BICT") should reflect the legislature's purpose in enacting the code; thus, just as "a Chapter 11 debtor [who] has no intention or ability to reorganize or perform its own liquidation or otherwise fulfill . . . bankruptcy obligations [should not] be permitted to remain in bankruptcy simply to enjoy the protections of the automatic stay . . . . when the

5

bankruptcy purpose of a case no longer exists . . ., a creditor should not be permitted to prolong or sustain a case merely to take advantage of benefits bankruptcy offers creditors." In re Mazzocone, 183 B.R. 402, 412 (Bankr. E.D. Pa. 1995), aff'd, 200 B.R. 568 (E.D. Pa. 1996)

39. In employing the BICT, the "analysis of the interest of one creditor (or group of creditors) of a debtor is not the equivalent of the BICT." Id.

40. In addition, to aid in the BICT analysis, the Courts have identified factors relevant to the issue of dismissal or conversion:

> (1) whether some creditors received preferential payments, whether equality of distribution would be better served by conversion rather than dismissal;
>
> (2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted;
>
> (3) whether the debtor would simply file a further case upon dismissal;
>
> (4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors;
>
> (5) in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise;
>
> (6) whether any remaining issues would be better resolved outside the bankruptcy forum;
>
> (7) whether the estate consists of a "single asset;"
>
> (8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests;
>
> (9) whether a plan has been confirmed and whether any property remains in the estate to be administered; and
>
> (10) whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

*In re Soppick*, 516 B.R. 733, 764 (Bankr. E.D. Pa. 2014).

41. When analyzing the aforementioned factors in the light of *In re Mazzacone*'s guidance, the balance shows that the best interest of all the creditors is to dismiss the action.

42. Factor 1: There is no assertion by any party, nor is there any evidence that would support there have been preferential payments made to any particular creditors. Any payments made to creditors were in the normal course of business, and Creditor Massie's debt arises from extraordinary circumstances. Further, there is better equality in distribution outside of bankruptcy because the Debtor is able to meet its obligations to the debtors with the assistance of Creditor Meritis, who has been cooperative with the Debtor. Further, Debtor Massie's claim is likely to be paid from Debtor's malpractice claims in the suit against Blank Rome, Nochumson P.C., and Jared Stein. Moreover, given the nature of the underlying case, Creditor Massie may be able to intervene in that litigation or garnish any of the proceeds from the litigation. Further, even if the Debtor were to transfer the funds from the litigation, such transfer would subject the Debtor and Transferee to a claim under the Pennsylvania Uniform Voidable Transfer Act, 12 Pa. Stat. and Cons. Stat. Ann. § 5101, et seq. Thus, there are remedies outside of bankruptcy that will adequately protect Creditor Massie and afford for a more proper and equitable distribution.

43. Factor 2: There is no ascertainable loss of rights that Creditor Massie or any other creditor will sustain from voluntary dismissal. On the other hand, due to the matter remaining in the bankruptcy court, Debtor is now deprived of its choice of forum in the malpractice claim it has brought. Dismissing the claim will allow Debtor to pursue the

claim in the Philadelphia Court of Common Pleas, which is the appropriate forum for the dispute to be heard.

44. Factor 3: Whether the Debtor would simply file another bankruptcy. The Debtor may file another petition. Debtor's application was made upon the suggestion of the Court and refiling would remedy the discrepancies in the proper petition. Notwithstanding, and with candor, the Debtor will also evaluate whether refiling at this time would be appropriate given the Malpractice litigation, venue issues related thereto, and the effect of the proceedings on Debtor's continued operations. As to the latter point, operating under bankruptcy has made running the business much more difficult due to the nature of the business as a nightclub. Given the need to continually deal with new or different vendors and entertainers, the burden of continued oversight hampers the flexibility that this type of business requires as an entertainment venue.

45. Factor 4: The ability of a Chapter 7 Trustee to reach the assets of the Debtor for the benefit of the Creditors. In the current case, the assets are not very liquid. The current assets are composed of the liquor license and liquor inventory. Liquor inventory is difficult to liquidate because it can only be transferred to another LCB License holder and only the sealed, unopened bottles can be transferred. Also, the sale of liquor to these third parties is regulated by the LCB. The liquor license is also difficult to liquidate because it is subject to regulation and has to be sold at an auction run by the LCB and is only transferrable in Philadelphia. The only other asset is the unliquidated claim that is subject to litigation. In order to liquidate this asset, the Trustee would have to determine whether or not to continue the claim or abandon said claim under 11 U.S.C. § 554. Moreover, Debtor is in a better position to litigate that matter to receive the highest

8

recovery than the Trustee. Further, this would only incur additional expenses, commissions, attorney's fees for trustee representation, and other costs to complete.

46. Factor 5: Whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise. Given the additional costs the estate would incur by a Chapter 7 Trustee in liquidating these difficult assets and litigating the Debtor's claims, the estate's value is greater with dismissal. Further, the business as an ongoing concern will have the ability to continue to generate revenue which will go to paying all the other creditors to this case.

47. Factor 6: whether any remaining issues would be better resolved outside the bankruptcy forum. This factor definitely weighs in favor of dismissal given that the adversary claims were removed from Federal Court based only upon the existence of this matter. These are wholly state claims that are by and between residence of the Commonwealth of Pennsylvania. The State Court is the proper forum with a superior interest in the determination of the litigation and the proper venue for the application of Pennsylvania law.

48. Factor 7: Whether the estate consists of a single asset. The estate does not consist of a single asset. Although there are few assets given the nature of the business, it is also not a business with a single piece of real estate either. The business operates with numerous employees and makes regular orders for inventory. It has bank accounts through which it conducts its business and owns its own liquor license.

49. Factor 8: Whether the debtor has engaged in misconduct and whether creditors need a chapter 7 case to protect their interests. Although Creditor Massie attempts to make an argument that Debtor has grossly mismanaged the company, the only facts that are

pointed to are neither gross mismanagement nor produced any prejudice. The Debtor has been open about its assets in its filings. The third-party bank accounts referred to were disclosed on the October operating statement and explained that they were accounts that had $0.00 in them. Further, Debtor has placed all money received into the DIP accounts and declared it. The unauthorized post-petition payment was improper, but it was an innocent mistake on behalf of the Debtor, and Counsel is more to blame for having taken the payment. Notwithstanding, the amount was repaid to the Debtor in-full with no prejudice to any Creditor. Creditor Massie asserts its concerns regarding the relationship between Debtor and Meritis; however, it does not cite to any conduct or evidence that support or even infer that the intercompany relationships or transactions have been improper. Finally, Creditor Massie makes an unsupported-naked assertion regarding its "concerns" related to the Malpractice Litigation and how it will be handled. Moreover, the matter is currently being handled by one of the foremost litigation firms in the Country, Saltz Mongeluzzi Bendesky P.C. Despite Creditor Massie's position, there is no evidence that the Debtor has utilized the Bankruptcy process simply to hamper or frustrate any creditor's rights.

50. Factors 9 and 10 are both inapplicable to the current case because these motions were made prior to the plan being submitted and there are no environmental concerns.

51. In addition to the foregoing, it is interesting that Blank Rome, LLP, as filed an opposition to dismissal given, they are not a creditor, but the party against whom the Debtor has brought suit. This is further indicative that the Federal Court is a forum that is less advantageous to the litigation of the Malpractice claim.

52. Finally, it should be noted that no other creditor has joined or filed its own motion in the matter despite their claims, especially the SBA whose claims are sizable.

53. When considering all the foregoing, dismissal weighs more heavily than conversion to Chapter 7 in the present case.

ii.   *Appointment of a Trustee over the Debtor is inappropriate at this time as Creditor Massie has not shown sufficient grounds to require the appointment of such a Trustee.*

54. Section 1104(a) of the Bankruptcy Code allows for the Court to appoint a trustee over a debtor upon application made either by the U.S. Trustee or any interested party prior to the confirmation of the plan, in pertinent part, "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor . . . ." 11 U.C.S. § 1104(a).

55. "The appointment of a trustee is an extraordinary remedy, representing a rare exception to the rule that the debtor remains in possession throughout its reorganization because current management 'is generally best suited to orchestrate the process of rehabilitation for the benefit of creditors and other interests in the estate.'" *In re Stream TV Networks, Inc.*, 2024 WL 87639, at *32 (slip); quoting, *In re Marvel Entertainment Group*, Inc., 140 F.3d 463, 471 (3d Cir. 2004).

56. To overcome the aforementioned presumption, the moving party must establish cause by clear and convincing evidence. *In re Salem Consumer Square OH LLC*, 629 B.R. 562, 575 (Bankr. W.D. Pa. 2021).

57. The list set forth in § 1104(a) is nonexclusive, and courts have found the following as grounds for cause: "conflicts of interest, misuse of assets and funds, inadequate recordkeeping and reporting, failure to file required documents, lack of adequate disclosure, lack of appropriate cost controls, transgressions related to taxes, failure to make required payments, lack of credibility and creditor confidence, and breaches of fiduciary duty." *In re Stream TV Networks, Inc.*, 2024 WL 87639, at *33.

58. In the present case, Creditor Massie fails to identify any instances of fraud, dishonesty, incompetency, or gross mismanagement in the running of the business affairs.

59. Likewise, Creditor Massie does not show any misuse of assets, conflicts of interest, issues with record keeping, tax issues, lack of adequate disclosure, or any other grounds listed above.

60. Rather, Creditor Massie points to a handful of nonspecific issues.

61. Creditor Massie states that Debtor is using a third-party bank account; however, it provides no proof.

62. Creditor Massie seems to be alluding to the disclosed Bank of America Accounts that Debtor reported on the October operating statement as having $0.00 balances. Creditor Massie has no evidence that the accounts are anything other than defunct empty accounts.

63. Creditor Massie states that there are intercompany transactions and relationships. Again, these were disclosed by the Debtor at the 341 Meeting of Creditors where it identified Meritis Group, LLC, as an insider. Further, Debtor disclosed the Members of Meritis Group, LLC, included members of the Debtor, and it also disclosed that the majority holder of Meritis Group, LLC was a family trust. Hence, Debtor has not failed to disclose any information.

64. Creditor Massie alleges incompetence and gross mismanagement based upon an unauthorized post-petition payment made to its counsel. However, this was an innocuous mistake that was corrected by counsel paying the money back into the bankruptcy estate, and is the same hearing that led to the suggestion that Debtor dismiss the action or the Trustee file for dismissal if new counsel was not procured.

65. Finally, Creditor Massie speaks of its "concerns related" to the Malpractice Litigation; however, he does not identify what concerns him. It is a bare assertion that Creditor Massie is concerned without substance.

66. The petition is obviously lacking issue pertaining to how the Debtor is operating the business, keeping records, or otherwise conducting business.

67. Given the foregoing, Creditor Massie simply cannot overcome the presumption by clear and convincing evidence.

iii.   *Creditor Massie's petition is inappropriate retaliation for Debtor refusing to assign Creditor Massie the rights to lawsuits the Creditor in which the Debtor does not have an interest.*

68. Prior to Creditor Massie's objection to Debtor's motion to dismiss and the filing of the instant motion to convert or appoint trustee, Debtor offered Creditor Massie to secure their judgment lien against any net amounts Culloo received in the malpractice case and, in return, Creditor Massy would not execute until recovery and Creditor would not object to Culloo reforming outside of bankruptcy.

69. Creditor Massie responded by demanding non-Debtor entities Meritis Group, LLC; No Ordinary Hospitality Group, LLC; and No Ordinary Hospitality Group-Houston, LLC, assign their interest in their separate malpractice claims to Creditor Massie.

70. Debtor refused the offer, and Creditor Massie filed its motions two days later.

71. The law is clear that "a creditor should not be permitted to prolong or sustain a case merely to take advantage of benefits bankruptcy offers creditors." *In re Mazzocone*, 183 B.R. at 412.

72. Creditor Massie was clearly fine with the Debtor leaving bankruptcy and operating per its own accord so long as it could take the interest of non-Debtor entities in the malpractice litigation.

73. This is clear indicator that Creditor Massie's objection is not with the dismissal of the Bankruptcy; rather, it is using the Bankruptcy procedure to exert influence on the malpractice litigations.

74. This is also supported by the face of Creditor Massie's argument which discusses cause at nauseum while recognizing the parties agree on cause.

75. Further, Creditor Massie's motion fails to apply the BICT factors despite having listed the factors.

76. Rather, it simply refers to "significant concerns about the financials of the Debtor . . . ." and unsubstantiated allegations that Debtor has not made full disclosures.

77. Significant concerns and beliefs are not the standard for determining the best interest of all creditors.

78. Given the foregoing, the only conclusion is that Creditor Massie is utilizing the bankruptcy process inappropriately to assert control over litigations of non-debtor entities.

CONCLUSION

WHEREFORE, for the foregoing reasons, Debtor, Culloo Entertainment LLC, respectfully requests this Honorable Court to a) Deny Creditor Massie's Motion to Convert Debtor's Chapter 11 Case to a Case Under Chapter 7 of the Bankruptcy Code or in the Alternative Appoint a Chapter 11 Trustee, and b) enter an order Granting Debtor's Motion for Voluntary Dismissal of the Bankruptcy Petition.

GAMBURG & BENEDETTO, LLC

Date: January 3, 2025

/s/ Joseph D. Rutala
Joseph D. Rutala, Esquire (313759)
1500 JFK Blvd, Ste 1203
Philadelphia, PA 19102
P: 215.360.3969
F: 215.383.1111
joe@rutala.com
Attorney for Debtor

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | : |
| | :    Chapter 11 |
| CULLOO ENTERTAINMENT, LLC | : |
| | :    Case No: 24-13553-AMC |
| Debtors | : |
| | : |

CERTIFICATE OF SERVICE

    I, Donald Benedetto, hereby certify that on January 3, 2025, I caused the foregoing Objection to Creditor Brayden Massie's Motion to Convert Debtor's Chapter 11 Case to a Case Under Chapter 7 of the Bankruptcy Code or in the Alternative Appoint a Chapter 11 Trustee to be served electronically on all CM/ECF participants registered in this case through the Court's CM/ECF system at their respective email addresses registered with the Court.

                                                                        GAMBURG & BENEDETTO, LLC

Date: January 3, 2025                                    /s/ Joseph D. Rutala
                                                     Joseph D. Rutala, Esquire (313759)